UNITED STATES *v.* LITTLE JOE WIESENFELD Co. (No. 4443)[1]

---

[1] C. A. D. 290.

84

United States Court of Customs and Patent Appeals, October 30, 1944

Paul P. Rao, Assistant Attorney General (Richard H. Welsh and Joseph F. Donohue, special attorneys, of counsel), for the United States.

Tompkins & Tompkins for appellee.

[Oral argument October 3, 1944, by Mr. Donohue; submitted on the record by appellee

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The Government has appealed here from a judgment of the United States Customs Court, First Division, which sustained a claim in the importer's protest that certain merchandise imported at the port of Baltimore was dutiable as "saddlery" at the rate of 20 per centum ad valorem under paragraph 1530 (f) of the Tariff Act of 1930, as modified by the trade agreement with the United Kingdom, T. D. 49753.

The merchandise consists of 19 bare saddle seats, described by the appraiser as "saddle seats Imit. Pigskin." The collector classified and assessed the merchandise for duty at the rate of 25 per centum ad valorem under paragraph 1531 of the Tariff Act of 1930, as modified by the said trade agreement, as "manufactures of leather, * * * or of which leather * * * is the component material of chief value, not specially provided for." The importer alternatively claimed at the rate of 15 per centum ad valorem under another subdivision of paragraph 1530 (f) of the said act, as modified 'by the said trade agreement, relating to "Saddles * * * not specially provided for, and parts thereof."

The pertinent provisions of the statute, as modified by the trade agreement, read as follows:

| Tariff Act of 1930; paragraph | Description of article | Rate of duty |
|---|---|---|
| 1530 (f)_____ | Harness valued at more than $70 per set, single harness valued at more than $40, saddles valued at more than $40 each, saddlery, and parts (except metal parts) for any of the foregoing. | 20% ad val. |
| | Saddles made wholly or in part of pigskin or imitation pigskin_____ | 20% ad val. |
| | Saddles and harness, not specially provided for, and parts thereof, except metal parts, finished or unfinished. | 15% ad val. |
| 1531_____ | * * * manufactures of leather, * * * or of which leather * * * is the component material of chief value, not specially provided for * * *. | 25% ad val. |

The only change which the trade agreement made in paragraph 1530 (f) of the Tariff Act of 1930 was with respect to the rates of duty.

The importer neither filed a brief nor appeared for oral argument in this court. As the case comes to us, the following facts found by the trial court are unchallenged: that the involved merchandise is not "saddles" but "parts of saddles," and that it is made in part of imitation pigskin. The Government, furthermore, concedes "that the involved saddle seats whether bare or complete, are valued at $40 or less." The question before us, therefore, is one of law only.

In support of its argument for reversal, the Government here relies upon our holding in *Wyman* v. *United States*, 13 Ct. Cust. Appls. 241, T. D. 41198. In that case, merchandise consisting of two saddles, each appraised at $24.32, stirrup leathers, felt saddle covers, reins, halters, bridles, martingales, nosebands, and girths was assessed for duty at the rate of 35 per centum ad valorem under paragraph 1436 of the Tariff Act of 1922, which read as follows:

PAR. 1436. Harness valued at more than $70 per set, single harness valued at more than $40, saddles valued at more than $40 each, saddlery, and parts (except metal parts) for any of the foregoing, 35 per centum ad valorem.

The importer in that case claimed that the merchandise was free of duty as "saddlery" under the provisions of section 201 and paragraph 1606 of the Tariff Act of 1922, which read:

FREE LIST

SEC. 201. * * * the articles mentioned in the following paragraphs, when imported into the United States * * *, shall be exempt from duty:

PAR. 1606. Leather: All leather not specially provided for; harness, saddles, and saddlery, in sets or parts, except metal parts, finished or unfinished, and not specially provided for; leather cut into shoe uppers, vamps, soles, or other forms suitable for conversion into manufactured articles; and leather shoe laces, finished or unfinished.

The Board of General Appraisers (now the United States Customs Court) sustained the importer's protest as to the saddles, but overruled the protests as to all the other merchandise, and the importer then appealed to this court. We reversed the judgment of the board as to the saddle girths and stirrup leathers, but affirmed as to all the

other merchandise. After reviewing the legislative history of the pertinent provisions of the Tariff Act of 1922, we there said:

The importer argues that the term "saddlery" used by both Houses must be construed to mean materials for making saddles and all articles used with saddles. We are not in accord with that construction and feel quite sure that Congress did not use the word "saddlery" in the sense for which the importer contends.

As commonly understood, "saddlery" means either saddles and whatever belongs to them collectively or *all leather articles and fittings used about horse furniture or for the equipment of horses.* See "Saddlery"—New Standard Dictionary and Century Dictionary. Webster's New National Dictionary defines "saddlery" to be "the materials for making saddles and harness; *the articles usually offered for sale in a saddler's shop.*" [Italics quoted.]

Taking into consideration that harness and saddles are particular kinds of saddlery and were with their nonmetallic parts specifically enumerated in paragraphs 1436 and 1606, it is apparent that Congress intended that in both paragraphs the designation "saddlery" should include all articles and fittings used as horse furniture or equipment not covered by the designation "harness, saddles, and parts thereof." In other words, Congress having expressly provided for harness, saddles, and parts thereof, it can hardly be assumed that there was a legislative intent to provide for the very same tariff entities under the designation "saddlery."

In our opinion there is nothing in the dutiable and free-list paragraphs which would justify us in holding that either House intended to limit the term "saddlery" to parts of harness or saddles. Indeed, any such construction as that would render unnecessary the express provision for parts of harness and saddles and deny effect to some of the language actually used by Congress.

The Government points out that our holding in the *Wyman* case was called to the attention of Congress in the Summary of Tariff Information, 1929, Vol. 2, p. 2071, and contends that when Congress enacted paragraph 1530 (f) of the Tariff Act of 1930 there was legislative approval of the judicial determination in the *Wyman* case to the effect that the term "saddlery" does not include any articles which are parts of saddles.

In the instant case, the trial court attempted to distinguish our holding in the *Wyman* case by stating that in the Tariff Act of 1922 there was no separate provision for pigskin or imitation pigskin saddles, or parts thereof, whereas in the Tariff Act of 1930 there is a provision for pigskin or imitation pigskin saddles but not for parts thereof. It stated:

From the foregoing it appears that the only reason why parts of saddles were excluded from the scope of the term "saddlery" in the *Wyman* case was that they were both equally specially provided for in the 1922 act, and "parts of saddles" was a narrower term than "saddlery." However, in the 1930 act, both as passed and as modified, there is no provision for parts of pigskin or imitation pigskin saddles, and it would certainly appear, therefore, that the term "saddlery" is narrower and more specific as applied to such articles than the provision for manufactures of which leather is the component material of chief value. * * *.

This reasoning, as we see it, apparently overlooks the fact that while there is no provision for parts of pigskin or imitation pigskin saddles under the second subdivision of paragraph 1530 (f), *supra,*

there is a provision for parts of saddles in the first subdivision, side by side with the provision for "saddlery"—which makes the situation substantially the same as that before this court when the *Wyman* case was decided. The first subdivision of said paragraph, it will be noticed, is identical, except for the rate of duty, with paragraph 1436 of the Tariff Act of 1922, which we construed in the *Wyman* case.

It is interesting to note that when H. R. 2667, which afterwards became the Tariff Act of 1930, was introduced in the House, and when it was reported back to the House from the Committee on Ways and Means, it contained a paragraph, numbered 1536, which read as follows:

PAR. 1536. Saddles made wholly or in part of pigskin or imitation pigskin, harness valued at more than $70 per set, single harness valued at more than $40, saddles valued at more than $40 each, saddlery, and parts (except metal parts) for any of the foregoing, 35 per centum ad valorem.

In a long committee amendment offered on the floor of the House (see Congressional Record, 71st Cong., 1st Sess., Vol. 71, p. 2014), including a great number of subjects, subdivision (f), the modification of which we are now considering, was added to paragraph 1530 (then numbered 1531) so as to be, in all respects with which we are here concerned, the same as that now appearing in the Tariff Act of 1930.

It will be noticed that in paragraph 1536, *supra*, of H. R. 2667, as introduced in the House, saddles made wholly or in part of pigskin or imitation pigskin were first provided for, and, after providing for harness and other kinds of saddles, the term "and parts   *   *   * for any of the foregoing" was used. As originally presented, therefore, parts of pigskin or imitation pigskin saddles were provided for at the rate of 35 per centum ad valorem.

The committee amendment hereinbefore referred to was offered and adopted on the floor of the House. This amendment covered not only this subject but many other leather articles, and the provisions of the paragraph were transposed so as to leave it substantially in the condition in which it is now found in the Tariff Act of 1930. It does not appear from the context of the amendment or any legislative history pertaining thereto just why the provision for pigskin or imitation pigskin saddles was treated in the above-stated manner.

In view of our conclusion, it is not necessary for us to determine whether the omission of a provision for parts in the second subdivision of paragraph 1530 (f), *supra*, was an oversight on the part of Congress in not realizing that the transposition left the construction of the paragraph open to the contention made here by the Government, or whether Congress deliberately refrained from making a provision in that subdivision applicable to parts of pigskin or imitation pigskin saddles, although it is difficult to understand why Congress should

desire, for parts, a different rate of duty from that applicable to the completed article. It is to be noted, however, that the transposition and modification by the House amendment changed the relationship between the two phrases "Saddles made wholly or in part of pigskin or imitation pigskin" and "parts * * * for any of the foregoing" so that the latter no longer related to or modified the former. Furthermore, it is obvious that if the third subdivision, as it now exists, had read "Saddles and harness, and parts thereof, not specially provided for," etc., the Government might not have made the same contention that it here makes.

After careful reflection, it seems to us that what we said in the *Wyman* case, *supra*, is equally applicable in this case, and that we could not here affirm the trial court without overruling, at least in effect, our holding in the *Wyman* case, which evidently met with Congressional approval in 1930.

At oral argument, counsel for the Government separately discussed each subdivision of paragraph 1530 (f), *supra*, explaining why, in the Government's opinion, the instant merchandise is excluded from each. It was contended that the merchandise is excluded from the first subdivision both because the saddles, of which the merchandise is parts, are valued at $40 or less and because the term "saddlery," as construed by this court in the *Wyman* case, does not embrace parts of saddles; that it is excluded from the second subdivision because it is parts of imitation pigskin saddles, and there is no provision for parts in that subdivision; and that it is excluded from the third subdivision because that relates to such saddles only as are not specially provided for, and since imitation pigskin saddles are specially provided for, the instant merchandise is not parts of saddles which are not specially provided for. Only by construing the paragraph in this manner, the Government argues, can effect be given to each part thereof.

It is unnecessary for us to rule on the Government's contention that the instant merchandise is not provided for in the third subdivision. Even if we should believe that the instant merchandise is properly dutiable under said third subdivision at the rate of 15 per centum ad valorem, the importer has not cross-appealed, and, according to the well-settled rule, a party cannot here obtain a more favorable judgment than that obtained below, without cross-appealing. *United States* v. *Pyrometer Instrument Co.*, 21 C. C. P. A. (Customs) 376, T. D. 46910, and cases cited. In other words, the question is moot. *B. Holman, Inc.* v. *United States*, 29 C. C. P. A. (Customs) 1, 3, C. A. D. 163; *California* v. *San Pablo & Tulare Railroad Co.*, 149 U. S. 308, 314; *Mills* v. *Green*, 159 U. S. 651, 653. It is enough, therefore, to hold that the instant merchandise is not dutiable as "saddlery" under the first subdivision.

It may very well be that the omission to provide for parts of pig-

skin or imitation pigskin saddles in the second subdivision of the paragraph was an oversight on the part of Congress, but that does not justify extending the scope of the term "saddlery" in the first subdivision to include parts of saddles and thereby render inoperative the express provision in that subdivision for parts of saddles, especially in view of the fact that the first subdivision is identical, as we pointed out hereinbefore, with paragraph 1436 of the Tariff Act of 1922 which we construed in the *Wyman* case, *supra*. Under the trial court's holding, the term "saddlery" would include parts of pigskin or imitation pigskin saddles but would not include, under our holding in the *Wyman* case, parts of other kinds of saddles. Such an elastic and varying construction of the term "saddlery," we think, was never intended, and we cannot approve it.

Certain imported merchandise other than the 19 bare saddle seats was covered by the protest in the instant case, and the dutiable classification thereof was passed upon by the court below. This appeal, however, is limited to the 19 bare saddle seats, and we therefore express no opinion as to the other merchandise.

For the reasons hereinbefore stated the judgment of the United States Customs Court, insofar as it relates to the said 19 bare saddle seats, is *reversed*.